UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

IN RE:                                           CASE NO. 04-13259

HOLLYWOOD CASINO                                 JOINTLY ADMINISTERED
SHREVEPORT, et al.
          Debtors                                CHAPTER 11

---

### Findings of Fact and Conclusions of Law for Confirmation of
### Joint Plan of the Debtors and the Bondholders Committee

### Introduction

The Debtors, Hollywood Casino Shreveport ("HCS"), Shreveport Capital

Corporation, HCS I, Inc., HCS II, Inc., HCS - Golf Course, LLC ("Golf Course"), and

HWCC-Louisiana, Inc. (collectively, the "Debtors"), together with the Official

Committee of Bondholder Creditors (the "Bondholders Committee"), have proposed

the Joint Plan of the Debtors and the Bondholders Committee dated July 6, 2005

(Docket No. 866) (the "Plan").[1]  The Debtors have also filed:

(i)     the Plan Supplement dated May 11, 2005 (Docket No. 661);

(ii)    a memorandum of law in support of confirmation of the Plan

        and omnibus response to objections to confirmation of the Plan

        dated June 6, 2005 (the "Confirmation Memorandum") (Docket

        No. 729);

---

[1]     Unless otherwise indicated, all capitalized terms used herein have the same
meaning as defined in the Plan.  Terms that are not defined herein but that are
defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure
have the meanings given to them therein.

(iii) Affidavit Of Brian Osborne Regarding The Methodology For The Tabulation Of Ballots And Results Of Voting With Respect To Joint Plan Of The Debtors And The Bondholders Committee Dated April 21, 2005 (the "Voting Certification") (Docket No. 729); and

(iv) Supplemental Affidavit of Brian Osborne Regarding the Certification of the Tabulation of Ballots and Results of Voting with Respect to the Joint Plan of the Debtors and the Bondholders Committee Dated April 21, 2005. (Docket No. 808).

In addition, the record before this Court on the hearing on confirmation of the Plan includes the docket of these Chapter 11 Cases maintained by the Clerk of the Court, all pleadings and other documents filed with this Court, all orders entered, and all evidence introduced and argument made at the hearings held before the Court during the pendency of the Chapter 11 Cases.

This Court held a hearing on confirmation of the Plan on Monday, June 13, 2005, Friday, June 17, 2005, Saturday, June 18, 2005, and Sunday June 19, 2005. The Plan embodies the settlements reached in open court during the Confirmation Hearings as set forth on the record as well as certain modifications set forth in the Confirmation Memorandum. Based upon the Court's review of the Disclosure Statement, the Plan, the Plan Supplement, the Voting Certification, the Confirmation Memorandum and the Certificates of Service filed in these cases; and upon (a) all the

evidence introduced at, and memoranda filed in connection with, and arguments of counsel made at, the Confirmation Hearing, and (b) the entire record of these Chapter 11 Cases; and after due deliberation thereon, the court makes the following findings of fact:[2]

### Findings of Fact

1. <u>Commencement of the Chapter 11 Cases</u>. On September 10, 2004 (the "HCS Petition Date"), an involuntary petition was filed against HCS. On October 30, 2004 (the "Order for Relief Date"), an order for relief was entered in HCS's case and the other Debtors (except Golf Course) filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended (the "Bankruptcy Code"). On March 28, 2005, Golf Course filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The chapter 11 cases of all the Debtors are being jointly administered.

2. <u>Disclosure Statement and Solicitation</u>. Following a hearing held on April 15, 2005, by order (Docket No. 596) dated April 21, 2005 (the "Solicitation Order"), the Court approved the Debtors' Disclosure Statement for Joint Plan of the Debtors and the Bondholders Committee dated April 21, 2005 under section 1125 of the Bankruptcy Code as containing "adequate information" of a kind and in sufficient detail to enable a hypothetical, reasonable investor typical of the Debtors' creditors to make an informed judgment whether to accept or reject the Plan.

---

[2] To the extent that a finding of fact is properly characterized as a conclusion of law, it shall be construed as a conclusion of law.

3. <u>Transmittal of Notice and Voting Materials</u>. The materials required by the Solicitation Order to be served on holders of claims or interests, including the Notice of approval of the Disclosure Statement, of the Confirmation Hearing, and of the deadline and procedures for voting on, and filing objections to, confirmation of the Plan (the "Confirmation Hearing Notice"), and, for holders of claims entitled to vote, the Disclosure Statement (which includes as an exhibit, a copy of the Plan), the ballots, and the Solicitation Order (collectively, the foregoing documents constitute the "Voting Package"), were served on parties in interest as stated in the relevant certificates of service and the Voting Certification.

4. <u>Timing of Solicitation</u>. Each full Voting Package was transmitted in connection with the solicitation of votes to accept the Plan in compliance with section 1125 and the Solicitation Order. The Debtors did not solicit acceptance of the Plan by any creditor before transmission of the Disclosure Statement.

5. <u>Designation of Classes</u>. The Plan designates 12 classes of claims or interests. The Classes were not designated for the purpose of gerrymandering the vote on the Plan.

6. <u>Specification of Classes Not Impaired</u>. Article III of the Plan specifies that Classes 1, 2, 8, 9, and 13 are unimpaired under the Plan. The Plan does not alter any of the legal, equitable, or contractual rights of the claims or interests in those Classes, except in the manner specified in section 1124(2) of the Bankruptcy Code.

7. <u>Specification of Treatment of Impaired Classes</u>. Article III of the Plan designates Classes 3, 4, 5, 7, 10, 11, and 12 as impaired, and Article IV of the Plan

specifies the treatment of claims and interests in those Classes. Article IV of the Plan provides that the holders of claims or interests in Classes 10, 11, or 12 will not receive or retain any property under the Plan on account of those claims or interests.

8. <u>No Discrimination</u>. Under Article IV of the Plan, the Plan provides for the same treatment for each claim or interest in each respective Class except to the extent that the Debtors and the holder of a claim or equity interest agree to a less favorable distribution or treatment of that particular claim or interest.

9. <u>Implementation of Plan</u>. The Plan provides the following means, among others, for the Plan's implementation:

(a) Articles VI and VIII of the Plan provides for (i) the funding of payments under the Plan, (ii) the continued corporate existence of the Debtors to the extent set forth in the Plan, (iii) the investment by the Plan Sponsors, (iv) the cancellation of Debt Securities and Old Equity Interests, and (v) the issuance of the New Notes, the New Noteholder Partnership Interests, the New Sponsor Interests, and the Noteholder Newco Interests and the resolution of gaming licensing issues, if any, related thereto;

(b) Articles V, VI, VII, and XIII provide for (i) the post-Effective Date pursuit, defense, and settlement of Disputed Claims, claims, and causes of action, (ii) the pursuit and resolution of Excluded Causes of Action and Excluded Liabilities by Noteholder Newco, (iii) the establishment and funding of the Distribution Reserve for Disputed Claims that are Excluded Liabilities, and (iv) the retention of Rights of Action;

(c) Article VIII of the Plan provides for (i) the admission of the partners of Reorganized HCS, (ii) the appointment of the directors and

officers of the reorganized Debtors, including of Noteholder Newco, (iii) the adoption of the Reorganized HCS Amended and Restated Joint Venture Agreement and a New Management Agreement with the Plan Sponsors, and (iv) the conversion of Noteholder Newco into a Delaware corporation;

(d) Article XII of the Plan provides for the retention of jurisdiction by the Court over certain matters as set forth in the Plan; and

(e) Article XIII of the Plan provides for, among other things, (i) the discharge of HCS, SCC, and Noteholder Newco, and (ii) the exculpation of the Debtors and certain other parties in interest for breaches of duty or other pre- and post-Petition acts in connection with the formulation and confirmation of the Plan, the solicitation of votes on the Plan, the raising of objections to the Plan, or any other process in or related to the Chapter 11 Cases.

10. <u>Non-Voting Equity Securities</u>. The amended and restated charter of Reorganized SCC and the Noteholder Newco Charter prohibit the issuance of nonvoting equity securities.

11. <u>Designation of Directors</u>. Article VIII of the Plan and the documents included in the Plan Supplement, including the Fourth Amended and Restated Joint Venture Agreement, Fifth Amended and Restated Joint Venture Agreement, and the Noteholder Newco Charter contain provisions with respect to the manner of selection of the officers and directors of Noteholder Newco, Reorganized SCC, and the other reorganized Debtors.

12. <u>Plan Proposed in Good Faith</u>. The Plan was formulated and proposed with the legitimate and honest purpose of restructuring the Debtors' obligations and

providing for the sale of the voting equity interests in HCS. The Debtors (including their governing bodies) and the Bondholders Committee (and its constituent members and professionals) exercised due care and reasonable business judgment in determining to propose and pursue the Plan and not to propose or pursue any other plan. The members of the Debtors' governing bodies and the members of the Bondholders Committee did not act out of any self-interest in doing so.

13. <u>Payments for Services or Costs and Expenses</u>. Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed and has been approved by, or is subject to the approval of, the Court as reasonable.

14. <u>Directors, Officers, and Insiders</u>. The Plan and Plan Supplement disclose the directors and officers of Noteholder Newco, Reorganized SCC, HCS I, Inc., HCS II, Inc., and HWCC-Louisiana, Inc., and the partners in Reorganized HCS, including information about key personnel of the Plan Sponsors.

15. <u>No Rate Changes</u>. There is no government regulatory commission that has jurisdiction over the rates of the Debtors.

16. <u>Acceptances of Plan</u>. The acceptances and rejections of the Plan, by Class, were as follows:

**Class 3**

| Accept | | | | Reject | | | |
|---|---|---|---|---|---|---|---|
| Amount | Amt. % | Number | No. % | Amount | Amt. % | Number | No. % |
| $105,336,500 | 73% | 35 | 76% | $39,686,000 | 27% | 11 | 24% |

**Class 4**

| Amount | Amt. % | Number | No. % | Amount | Amt. % | Number | No. % |
|---|---|---|---|---|---|---|---|
| $21,750,000 | 59% | 9 | 90% | $15,250,000 | 41% | 1 | 10% |

**Class 5**

| Amount | Amt. % | Number | No. % | Amount | Amt. % | Number | No. % |
|---|---|---|---|---|---|---|---|
| $182,022,500 | 70% | 44 | 79% | $54,936,000 | 30% | 12 | 21% |

**Class 7**

| Amount | Amt. % | Number | No. % | Amount | Amt. % | Number | No. % |
|---|---|---|---|---|---|---|---|
| $44,817.61 | 0.28% | 1 | 14.29% | $16,080,191.66 | 99.72% | 6 | 85.71% |

17. <u>Acceptance by Non-Insiders</u>. None of the holders of claims in Class 3 or Class 5 are directors, officers, partners of or in, or persons in control of any of the Debtors or a relative or affiliate of any such person.

18. <u>Treatment of Priority Claims</u>. The Plan provides for the payment in cash in full of each claim entitled to priority under section 507 of the Bankruptcy Code.

19. <u>Feasibility</u>. The financial projections for Reorganized HCS for the years 2005 through 2009 and the assumptions on which they are based are reasonable. The Plan Sponsors are experienced in the gaming industry. The necessary approval of the Louisiana Gaming Control Board is likely to be received. The projections show that Reorganized HCS will have adequate cash to meet its obligations under the Plan as they come due and maintain operations on a going-forward basis and demonstrate a reasonable prospect for a successful reorganization. Noteholder Newco (formerly HCS – Golf Course, LLC) will not have any debt under the terms of the Plan and will have adequate cash to fund its limited operations. Shreveport Capital Corporation

will continue to exist solely for the purpose of being a co-issuer of the New Notes, and its prospects for a successful reorganization are therefore tied to the prospect of Reorganized HCS. The Plan provides for the liquidation of the other Debtors.

20. Payment of Fees. All fees payable under section 1930 of title 28, United States Code, as determined by the Court on the Confirmation Date, have been paid or will be paid on the Effective Date.

21. Continuation of Retiree Benefits. Under Section 9.6 of the Plan, the Debtors' obligation, if any, to pay "retiree benefits," as that term is defined in section 1114(a) of the Bankruptcy Code, will continue, subject to the Debtors' rights with respect thereto.

22. Reorganization Values. The values of the Debtors' assets and of the distributions under the Plan are as set forth below in this paragraph. The values are determined for settlement purposes only and shall have no effect if for any reason the Plan Effective Date does not occur:

(a) The reorganization value, as of the date of the hearing on Confirmation, of the collateral shared by the First Mortgage Notes and the Senior Secured Notes is $100,692,000.

(b) The reorganization value, as of the date of the hearing on Confirmation, of the furniture, fixture, and equipment that secures the Senior Secured Notes is $14,242,000.

(c) The reorganization value, as of the date of the hearing on Confirmation, of the collateral securing the First Mortgage Notes is $94,398,750.

(d) The reorganization value, as of the date of the hearing on Confirmation, of the collateral securing the Senior Secured Notes is $20,535,250.

(e) The value, as of the date of the hearing on Confirmation, of HCS's gaming license is $28,000,000.

(f) The value, as of the date of the hearing on Confirmation, of HCS's cash on hand is $26,166,000.

(g) The value, as of the date of the hearing on Confirmation, of the New Notes to the distributed under the Plan is $140,000,000.

(h) The value, as of the date of the hearing on Confirmation, of the securities and other property to be distributed under the Plan to Class 3 is $94,398,750.

(i) The value, as of the date of the hearing on Confirmation, of the securities and other property to be distributed under the Plan to Class 4 is $20,535,250.

(j) The property to be distributed under the Plan to Class 5 includes $25,066,000 face amount of New Notes plus all of the Noteholder Newco Interests.

(k) The New Notes are to be allocated as between the holders of First Mortgage Notes and Senior Secured Notes as follows:

|  | Secured Claims (Classes 3 & 4) | Deficiencies (Class 5) | Total New Notes |
|---|---|---|---|
| First Mortgage Notes | $ 94,398,750 | $19,245,675 | $113,644,425 |
| Senior Secured Notes | 20,535,250 | 5,820,325 | 26,355,575 |
|  | $114,934,000 | $25,066,000 | $140,000,000 |

(l) The Noteholder Newco Interests shall be allocated between the Class 5 deficiency claims of the holders of First Mortgage Notes and Senior Secured Notes,

respectively, as follows:

| | |
|---|---|
| First Mortgage Notes: | 76.78% |
| Senior Secured Notes: | 23.22% |

(m) The property to be distributed under the Plan to Class 7 is cash equal to 52% of the Allowed amounts of Class 7 Claims (plus interest on any payment made after July 31, 2005).

(n) The findings in this paragraph 22 supersede and replace the findings made on the record at the Confirmation hearing to the extent such hearing findings are inconsistent herewith.

23. Liquidation Values and Distribution. With respect to each impaired Class of claims or interests, each holder of a claim or interest of such Class has accepted the Plan, or would receive or retain in a liquidation of HCS under Chapter 7 of the Bankruptcy Code on account of such claim or interest, property of a value, as of the date of the hearing on Confirmation, that is no greater than the amount that such holder will receive or retain under the Plan.

24. Modifications to the Plan. Under Bankruptcy Rule 3019, the modifications made to the Plan as set forth on the record at the Confirmation Hearing are immaterial so that the Disclosure Statement provides adequate information about the Plan, as modified, and the modifications do not adversely affect the treatment of the claim of any creditor or the interest of any equity security holder other than those who have accepted the modifications on the record.

25. Assumption and Rejection of Contracts and Leases. The Debtors' decision to assume or reject those executory contracts and unexpired leases that are

assumed or rejected under the Plan is a sound exercise of their business judgment that assumption or rejection is in the best interest of the Debtors and their estates.

26. <u>Good-Faith Solicitation</u>. The Debtors, the Plan Sponsors, the Committees and the members of any Committee, U.S. Bank National Association, Broadmoor/Roy Anderson Corp., Broadmoor L.L.C., Black Diamond Capital Management, L.L.C., funds managed by it and its affiliates, and their respective directors, officers, employees, shareholders, members, agents, advisors, accountants, consultants, attorneys, and other representatives have acted in "good faith" within the meanings of section 1125(e) and section 1129(a)(3) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with their respective activities relating to the formulation of the Plan and the solicitation of acceptances or rejections of the Plan, the filing and defense of objections to confirmation, the participation in settlement negotiations over confirmation objections, and their participation in the activities described in section 1125 of the Bankruptcy Code.

## **Conclusions of Law**

Based on the foregoing Findings of Fact and on the record in these Chapter 11 Cases, the Court makes the following conclusions of law:[3]

1. <u>Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. This Court has jurisdiction over these cases under 28 U.S.C. §§ 157 and 1334. Venue

---

[3] To the extent that a finding of fact is properly characterized as a conclusion of law, it shall be construed as a conclusion of law.

is proper under 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2. <u>Burden of Proof</u>. To obtain confirmation of the Plan, the Plan Proponents have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence.

3. <u>Transmittal and Mailing of Materials; Notice</u>. The transmittal of the Disclosure Statement, the Plan, the ballots, the Solicitation Order, and the Confirmation Hearing Notice, as set forth in the relevant certificates of service and the Voting Certification, complied with the Solicitation Order and the Bankruptcy Rules and was appropriate notice in the particular circumstances. No other or further notice is required.

4. <u>Voting</u>. Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and other, relevant rulings of the Court.

5. <u>Classes accepting the Plan</u>. Classes 3 and 5 have each accepted the Plan.

6. <u>Classes deemed to accept the Plan</u>. Because Classes 1, 2, 8, 9, and 13 are not impaired, they are deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

7. <u>Classes not accepting the Plan</u>. Classes 4 and 7 have not accepted the Plan.

8. Classes deemed not to accept the Plan. Because holders of claims or interests in Classes 10, 11, and 12 will not receive or retain any property on account of those claims or interests, those Classes are deemed not to accept the Plan under section 1126(g) of the Bankruptcy Code.

9. Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code and thereby meets the requirements of section 1129(a)(1) of the Bankruptcy Code.

10. Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). The claims and interests placed in each Class are substantially similar to other claims and interests, as the case may be, in each such Class. There are valid business, factual, and legal reasons for separately classifying the various Classes of claims and interests created under the Plan. The classification does not unfairly discriminate among holders of claims and interests. The Plan therefore meets the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.

11. Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). By specifying which Classes are not impaired under the Plan, the Plan meets the requirements of section 1123(a)(2) of the Bankruptcy Code.

12. Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). By specifying which Classes are impaired and the treatment of claims or interests in those Classes, the Plan meets the requirements of section 1123(a)(3) of the Bankruptcy Code.

13. <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. Because the Plan provides for the same treatment for each claim or interest in each respective Class except to the extent that the Debtors and the holder of a claim or equity interest agree to a less favorable distribution or treatment of that particular claim or interest, the Plan meets the requirements of section 1123(a)(4) of the Bankruptcy Code

14. <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>. The means for implementation of the Plan are adequate and proper means for the Plan's implementation. Therefore, the Plan meets the requirements of section 1123(a)(5) of the Bankruptcy Code.

15. <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. Because the amended and restated charters of Reorganized SCC and the Noteholder Newco Charter will prohibit the issuance of nonvoting equity securities, the Plan meets the requirements of section 1123(a)(6) of the Bankruptcy Code.

16. <u>Designation of Directors (11 U.S.C. § 1123(a)(7))</u>. The provisions for the selection of the officers and directors of Noteholder Newco, Reorganized SCC, and the other reorganized Debtors provided under Article 8 of the Plan and under the Plan Supplement are consistent with the interests of creditors, equity security holders, and public policy, and the Plan therefore meets the requirements of section 1123(a)(7) of the Bankruptcy Code.

17. <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The Plan's provisions, including the provisions for assuming and rejecting executory contracts and unexpired leases, and for retaining, enforcing, settling, or adjusting any claim or

interest are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

18. Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). Except as otherwise provided or permitted by orders or rulings of the Court, the Debtors and the Bondholders Committee have complied with the applicable provisions of the Bankruptcy Code, and have complied with the applicable provisions of the Bankruptcy Rules and the Solicitation Order in transmitting the Voting Packages and in soliciting and tabulating votes on the Plan. Therefore, the requirements of section 1129(a)(2) of the Bankruptcy Code have been met.

19. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

20. Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Because any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed and has been approved by, or is subject to the approval of, the Court as reasonable, the requirements of section 1129(a)(4) of the Bankruptcy Code have been met.

21. Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Plan and Plan Supplement disclose the directors and officers of Noteholder Newco, Reorganized SCC, HCS I, Inc., HCS II, Inc., and HWCC-Louisiana, Inc., and the partners of reorganized HCS, including information about key personnel of the Plan

Sponsors, the Debtors and the Bondholders Committee. The appointment to, or continuance in, such offices of the individuals identified by the Plan Proponents is consistent with the interests of holders of claims against and interests in the Debtors and with public policy. The Plan therefore complies with section 1129(a)(5) of the Bankruptcy Code.

22. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. Section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases because no government regulatory commission has jurisdiction over the rates of the Debtors.

23. <u>Liquidation Value Test (11 U.S.C. § 1129(a)(7))</u>. With respect to each impaired Class of claims or interests, each holder of a claim or interest of such Class has accepted the Plan or will receive or retain under the Plan on account of such claim or interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date. Therefore, the Plan meets the requirements of section 1127(a)(7) of the Bankruptcy Code.

24. <u>Non-Impairment</u>. Classes 1, 2, 8, 9, and 13 are not impaired under the Plan, as defined in section 1124 of the Bankruptcy Code.

25. <u>Acceptance of Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Classes 3 and 5, which are impaired under the Plan, have accepted the Plan. Classes 4 and 7, which are impaired under the Plan, have not accepted the Plan. Classes 10, 11, and 12 do not receive or retain any property under the Plan and, therefore, under section 1126(g) of the Bankruptcy Code, are deemed to not have accepted the Plan.

26. Treatment of Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Postpetition Claims, Priority Tax Claims, and Other Priority Claims under Articles II and IV of the Plan meets the requirements of section 1129(a)(9).

27. Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10)). Because there are no insiders who are holders of claims in Class 3 or Class 5, at least one class has accepted the plan, determined without including any acceptance of the Plan by any insider, thus meeting the requirements of section 1129(a)(10) of the Bankruptcy Code.

28. Feasibility (11 U.S.C. § 1129(a)(11)). With respect to those Debtors that will not be liquidated under the terms of the Plan, if the Effective Date of the Plan occurs, confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors. Accordingly, the Plan meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

29. Payment of Fees (11 U.S.C. § 1129(a)(12). Because all fees payable under section 1930 of title 28, United States Code, as determined by the Court on the Confirmation Date, have been paid or will be paid on the Effective Date, the requirements of section 1129(a)(12) of the Bankruptcy Code have been met.

30. Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Because Section 9.6 of the Plan provides that the Debtors' obligation, if any, to pay "retiree benefits," as that term is defined in section 1114(a) of the Bankruptcy Code will continue, subject to the Debtors' rights with respect thereto, the Plan meets the requirements of section 1129(a)(13) of the Bankruptcy Code.

31. Nonconsensual Confirmation for Class 4 (Section 1129(b)). The Plan does not unfairly discriminate against holders of claims in Class 4, because there are no other claims that have the same collateral or priority as the claims in Class 4, and the Plan provides holders of claims in Class 4 with New Notes with a net present value equal to the Allowed Senior Secured Note Claim. Under section 1129(b)(2)(A)(i) of the Bankruptcy Code, the Plan is fair and equitable to Class 4, as holders of claims in that Class will retain their liens securing the Senior Secured Note Claims by receiving New Notes, which are secured by the same collateral securing the existing Senior Secured Notes and by substantially all the assets of Reorganized HCS, and will receive deferred cash payments under the New Notes that total at least the allowed amount of Senior Secured Note Claims, and are of a value, as of the Effective Date of the Plan, of at least the value of Class 4's interest in the Debtors' interest in the property securing the Senior Secured Note Claims. Furthermore, under section 1129(b)(2)(A)(iii) of the Bankruptcy Code, holders of claims in Class 4 will realize under the Plan the indubitable equivalent of their claims because they will receive New Notes that are secured by similar security and that are issued by an entity, Reorganized HCS, that will be able to satisfy the obligations on the New Notes.

32. Nonconsensual Confirmation for Class 7 (Section 1129(b)). The Plan does not discriminate unfairly against Class 7, because (i) the claims in Class 7 have the same priority and rights against the Debtors as the claims in Class 5, (ii) the payment in full of the customer, employee, and tax claims in Class 9 in the ordinary course of

business as provided in the Plan is authorized under sections 507(a) and 1129(a)(9) of the Bankruptcy Code or prior order of this Court and is consistent with the Investment Agreement and the need to preserve the value of Reorganized HCS, (iii) there are no other Classes of claims that have the same priority and rights against the Debtor as the claims in Classes 5 and 7, and (iv) the recovery for claims in Class 7 is 52% of the Allowed amount of the claims. Moreover, the Plan permits a holder of a claim in Class 7 the opportunity to elect to vote and be treated as a holder of a claim in Class 5. The Plan's treatment of Class 7 is fair and equitable in accordance with section 1129(b)(2)(B) because no class senior to Class 7 will receive more than the allowed amount of claims in that class, and no holder of a claim or interest junior to Class 7 claims will receive or retain any property under the Plan on account of such junior claim or interest.

33. Nonconsensual Confirmation for Class 10 (Section 1129(b)). No distributions are being made from the estates of HCS I, Inc., HCS II, Inc., HWCC-Louisiana, Shreveport Capital Corp., or HCS – Golf Course, LLC on account of any claims or interests because those estates either have no assets or the liens and claims of the holders of the First Mortgage Notes are entitled to recover the entire value of the assets of those estates. Similarly, making distributions from HCS's estate on Intercompany Claims would not result in any distributions from the estates of the other Debtors because those distributions would be subject to the liens and claims of holders of the First Mortgage Notes. Accordingly, the Plan does not unfairly discriminate against Other Unsecured Claims and Intercompany Claims by not

providing any distribution on account of those claims. Furthermore, the Plan treats Class 10 fairly and equitably under section 1129(b)(2)(B) because no class senior to Class 10 will receive more than the allowed amount of claims in that class, and no holder of a claim or interest junior to Class 10 claims will receive or retain under the Plan on account of such junior claim or interest any property.

34. Nonconsensual Confirmation for Class 11 (Section 1129(b)). The Plan does not discriminate unfairly against and is fair and equitable to claims that have been subordinated under section 510(b) or 510(c) of the Bankruptcy Code because the Debtors' assets are worth less than the Allowed secured and unsecured claims against their estates and accordingly holders of subordinated claims are not entitled to any distribution on account of their claims, and no holder of a claim or interest junior to Class 11 claims will receive or retain under the Plan on account of such junior claim or interest any property.

35. Nonconsensual Confirmation for Class 12 (Section 1129(b)). The Plan does not unfairly discriminate against and is fair and equitable to Old Equity Interests because the Debtors' assets are worth less than the Allowed secured and unsecured claims against their estates, and accordingly holders of equity interests are not entitled to any distribution on account of their interests, all interests including HCS partnership interests are being cancelled under the Plan other than Subsidiary Equity Interests (in SCC and Golf Course), and no holder of a claim or interest junior to Class 12 claims will receive or retain any property under the Plan on account of such junior claim or interest. The Plan does not provide for the liquidation of SCC and

04-13259 - #868   File 07/06/05   Enter 07/06/05 20:41:20   Main Document   Pg 21 of 25

Golf Course, because it is more convenient and efficient to use these existing entities to be the co-issuer on the New Notes and to be Noteholder Newco rather than to form new companies.

36. Modifications to the Plan. Under Bankruptcy Rule 3019, the modifications made to the Plan as set forth on the record at the Confirmation Hearing do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code. Therefore the modifications are deemed accepted by all creditors and equity security holders who have previously accepted the Plan, and there is no need to afford holders of claims or interests an opportunity to change previously cast rejections of the Plan.

37. Reasonableness of Settlement. The settlement set forth on the record at the Confirmation Hearing, which resulted in Plan modifications referenced in the immediately preceding paragraph, is reasonable, was made in good faith by all of the parties to the settlement, and is in the best interests of the Debtors, their estates, creditors, and equity security holders.

38. Satisfaction of Confirmation Requirements. The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and should be confirmed.

39. Good-Faith Solicitation (11 U.S.C. § 1125(e)). Because the Debtors, the Plan Sponsors, the Committees and the members of any Committee, U.S. Bank National Association, Broadmoor/Roy Anderson Corp., Broadmoor L.L.C., Black Diamond Capital Management, L.L.C., funds managed by it and its affiliates, and

their directors, officers, employees, shareholders, members, agents, advisors, accountants, consultants, attorneys, and other representatives have acted in "good faith" within the meanings of section 1125(e) and section 1129(a)(3) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the formulation of and the solicitation of acceptances or rejections of the Plan, the filing and defense of objections to confirmation, the participation in settlement negotiations over confirmation objections, and their participation in the activities described in section 1125 of the Bankruptcy Code, they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code, the determination of non-liability in section 13.5 of the Plan, and the releases included in Section 4.12 of the Plan, which are reasonable and appropriate in these cases.

40. <u>Assumption and Rejection of Contracts and Leases</u>. The Debtors' decision to assume or reject those executory contracts and unexpired leases that are assumed or rejected under the Plan is in compliance with sections 365 and 1123(b) of the Bankruptcy Code.

41. <u>Exemption under Section 1145</u>. The issuance and distribution of the Noteholder Newco Interests, the New Notes, the New Noteholder Partnership Interests, and the New Sponsor Interests as described in the Plan satisfy the requirements of section 1145(a)(1) of the Bankruptcy Code, and therefore section 5 of the Securities Act of 1933, as amended, and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issue of,

underwriter of, or broker or dealer in, a security do not apply to the issuance and distribution to holders of claims in these Chapter 11 Cases of those securities.

42. <u>Exemption under Section 1146</u>. Under section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of a security or the making or delivery of an instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax or similar tax.

43. <u>Retention of Jurisdiction</u>. The Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

### 

This done and signed this 6th day of July, 2005, at Shreveport, Louisiana.

UNITED STATES BANKRUPTCY JUDGE

This Finding of Facts and Conclusions of Law was prepared and is being submitted by:

/s/ R. Patrick Vance
R. PATRICK VANCE   (Bar No. 13008)
CORINNE G. HUFFT   (Bar No. 26892)
Jones, Walker, Waechter, Poitevent, Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
Facsimile: (504) 582-8010

-and-

*Pro Hac Vice*
RICHARD B. LEVIN
GLENN S. WALTER
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687 -5000
Facsimile: (213) 687-5600

Counsel for Debtors and Debtors in Possession